IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| KEITH KIRKSEY, | |
| Plaintiff, | **8:24CV268** |
| vs. | |
| ORIENTAL TRADING COMPANY INC., | **MEMORANDUM AND ORDER** |
| Defendant. | |

This matter is before the Court on Defendant Oriental Trading Company, Inc.'s ("OTC") Motion in Limine to Exclude Testimony of Plaintiff's Expert Witness Jerry Authier, Ph.D. ("Authier"), Filing No. 76, and Plaintiff Keith Kirksey's ("Kirksey") Motion to Exclude the Report and Testimony of Timothy D. Loudon. Filing No. 81. For the reasons below, OTC's motion in limine, Filing No. 76, will be denied and Kirkey's motion to exclude, Filing No. 81, will be granted.

## BACKGROUND

OTC is a retailer of novelties and gifts. Kirksey is an African American male who began his employment with OTC on or about June 1, 2017. According to Kirksey, during his employment, he experienced a series of racially targeted incidents including the placing of a noose in his workspace and the placing of a clown head with, what he perceived as, a noose around its neck where Kirksey would see it. He reported these incidents to OTC who indicated it would investigate. Kirksey was dissatisfied with OTC's investigation, and its outcome, and thereafter felt unfairly targeted by OTC in retaliation for his reporting. On July 2, 2024, Kirksey filed a Complaint against OTC stemming from his employment alleging claims of race discrimination, retaliation, and harassment/hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §

1

2000e et seq., and the Nebraska Fair Employment Practices Act, Neb. Rev. Stat. § 48-1101 et seq., as well as negligent infliction of emotional distress. Filing No. 1.

In an effort to establish his claims, Kirksey engaged Authier as an expert. Authier is clinical psychologist licensed in Nebraska who was retained to conduct a psychological evaluation of Kirksey. Authier opined that Kirksey suffers from post-traumatic stress disorder, persistent depressive disorder with paranoid ideation, and generalized anxiety disorder. He further concluded that Kirksey's negative psychological and psychiatric symptoms are attributable to Kirksey's time working at OTC. Filing No. 78-2. In reaching these conclusions, Authier used a diagnostic interview, Minnesota Multiphasic Personality Inventory, 2nd Edition ("MMPI-2") and the Sachs Sentence Completion Test. Filing No. 78-2 at 3. Authier further opined that Kirksey would need weekly psychotherapy sessions for an indeterminate amount of time but "at least a year if not longer and possibly the rest of his life." Filing No. 78-2 at 6.

In an effort to rebuke Kirksey's claims, OTC designated Loudon as an expert in the field of human resources and workplace investigations. Filing No. 87. Loudon has a juris doctor degree, is licensed to practice law in multiple states, and has practiced labor and employment law in various capacities since 1981. Filing No. 84-1. If called to testify Loudon's testimony will address: "(1) the adequacy of the Company's investigation of and response to Kirksey's June 18, 2020 complaint of racial harassment (i.e., the hangman's noose incident); (2) the adequacy of the Company's investigation of and response to Kirksey's October 22, 2022 complaint of racial harassment (i.e., the clown's head incident); (3) the adequacy and necessity of the Company's investigation of and response to the October 25, 2022 report that Kirksey "carried a piece" at work; (4) the adequacy of the Company's investigation of and response to Kirksey's October 20, 2023 complaint regarding verbal abuse (i.e., the Jim Homan incident); and (5) the reasonableness of the

Company's June 1, 2023 request that Kirksey authorize the Company to access his Motor Vehicle Records." Filing No. 84-1 at 9.

## ANALYSIS

The admissibility of expert testimony is primarily governed by Federal Rule of Evidence 702. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 588 (1993).; *United States v. Strong*, 826 F.3d 1109, 1115 (8th Cir. 2016) (noting that Federal Rule of Evidence 403 balancing still applies). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702.

The trial judge holds a "gatekeeping function" to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert*, 509 U.S. at 589; *see also Sprafka v. Med. Device Bus. Servs., Inc.*, 139 F.4th 656, 660 (8th Cir. 2025). "As the gatekeeper, the district court's role is to discern expert opinion evidence based on 'good grounds' from subjective speculation that masquerades as scientific knowledge." *Ackerman*, 951 F.3d at 933 (quotation omitted). To be admissible, the trial court must find (1) "the testimony must be useful to the finder of fact in deciding the ultimate issue of fact, meaning it must be

relevant"; (2) "the expert must be qualified to assist the finder of fact"; and (3) "the testimony must be reliable or trustworthy in an evidentiary sense." *Crabar/GBF, Inc. v. Wright*, 142 F.4th 576, 587 (8th Cir. 2025) (quoting *In re Bair Hugger Forced Air Warming Devices Prod. Liab. Litig.*, 9 F.4th 768, 777 (8th Cir. 2021)).

Testimony is relevant if it is "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Daubert*, 509 U.S. at 591. Expert testimony assists the trier of fact when it provides information beyond the common knowledge. *Kudabeck v. Kroger*, 338 F.3d 856, 860 (8th Cir. 2003).. To prove reliability, the party offering the expert testimony must show "both that the expert is qualified to render the opinion and that the methodology underlying [their] conclusions is scientifically valid.*" In re Wholesale Grocery Prod. Antitrust Litig.*, 946 F.3d 995, 1000 (8th Cir. 2019) (quoting *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 757-58 (8th Cir. 2006). Factors to consider when assessing reliability include:

> (1) whether the expert's theories have been tested, (2) whether the expert's theories have been subject to peer review or publication, (3) whether there is a known or potential error rate, (4) whether there are controlling standards, (5) whether the theory or technique is generally accepted in the relevant scientific community, (6) whether the expertise was developed for litigation or naturally flowed from research, and (7) whether the expert ruled out other alternative explanations.

*Russell v. Whirlpool Corp.*, 702 F.3d 450, 456 (8th Cir. 2012).

Expert opinions that are "more or less legal conclusions about the facts of the case as presented to the experts" are "merely opinions meant to substitute the judgment of the district court." *Davis v. City of Little Rock*, 122 F.4th 326, 332 (8th Cir. 2024) quoting *In re Acceptance Ins. Companies Sec. Litig.*, 423 F.3d 899, 905 (8th Cir. 2005). Thus, an expert cannot testify as to matters of law, and legal conclusions are not a proper subject of expert testimony. *S. Pine Helicopters, Inc.*

*v. Phoenix Aviation Managers, Inc.*, 320 F.3d 838, 841 (8th Cir. 2003); *United States v. Bull*, 8 F.4th 762, 768 (8th Cir. 2021).

Daubert and its progeny "call for the liberal admission of expert testimony." *In re Bair Hugger*, 9 F.4th 768, 777 (8th Cir. 2021). Thus, "the rejection of expert testimony is 'the exception rather than the rule.'" *United States v. Perry*, 61 F.4th 603, 606 (8th Cir. 2023) (quoting *Robinson v. GEICO Gen. Ins. Co.*, 447 F.3d 1096, 1100 (8th Cir. 2006)). A district court may exclude an expert's opinion if it is "so fundamentally unsupported" by its factual basis "that it can offer no assistance to the jury." *In re Bair Hugger*, 9 F.4th at 778 (quoting *Loudermill v. Dow Chem. Co.*, 863 F.2d 566, 570 (8th Cir. 1988)). On the other hand, the "general rule" is that "the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility." *Id.* at 778. The party calling the challenged expert as a witness has the burden of demonstrating the reliability of its expert's opinion by a preponderance of the evidence.[1] Fed. R. Evid. 702.

### 1. Authier

OTC does not move to preclude Authier from testifying altogether but seeks to limit his testimony to that of a treating provider. Filing No. 77 at 2. OTC primarily argues that Authier's opinions should be excluded because the foundation of Authier's opinions rest solely on information Kirksey (and perhaps his counsel) conveyed to him. Filing No. 77 at 2. OTC further argues Authier should be prohibited from offering opinions as to Kirksey's need for psychotropic medications or EMDR therapy because he is not an expert nor a provider of these treatments. *Id.* Finally, OTC contends that Authier testified inconsistently, or "recanted", some

---

[1] In 2023, Rule 702 was amended "to clarify and emphasize that expert testimony may not be admitted unless the proponent demonstrates to the court that it is more likely than not that the proffered testimony meets the admissibility requirements set forth in the rule." Fed. R. Evid. 702, Advisory Committee notes to 2023 amendment.

of his opinions during his deposition, and thus, should be precluded from testifying as to those opinions at trial.

The Court considers whether Authier and his opinions pass Rule 702's screening requirement including relevance, the expert's qualifications, and reliability. *In re Bair Hugger*, 9. F.4th at 777.

Authier is a psychologist licensed in the State of Nebraska since 1973. Filing No. 50-2 at 5. He obtained his bachelor's degree in psychology and doctorate in clinical psychology. Filing No. 90-1 at 28. Throughout his 50-year career, Authier was the director of behavioral science at the University of Nebraska and Clarkson Family Medicine and saw patients in private practice. Filing No. 90-1 at 50; Filing No. 50-2 at 5-6. Authier has authored various articles and books and presented at a range of conferences, primarily during his years as an educator. *Id*.

Authier conducted a diagnostic interview of Kirksey in January 2025. Filing No. 50-2 at 18. During the psychological evaluation Authier employed three procedures including a diagnostic interview, the Minnesota Multiphasic Personality Inventory, 2nd edition (MMPI-2), and the Sachs Sentence Completion Test. *Id*.; Filing No. 90-1 at 88. As a result of this evaluation, Authier diagnosed Kirksey with post-traumatic stress disorder (PTSD), persistent depressive disorder with paranoid ideation, and generalized anxiety disorder. Filing No. 50-2 at 20. Authier concluded that Kirksey has "clearly suffered extreme negative psychological and psychiatric symptoms as a result of the toxic work environment and harassing and hate incidents that occurred while working at Oriental Trading Company." Filing No. 50-2 at 20. At the time of the evaluation, Authier opined that Kirksey would require weekly psychotherapy sessions, for a year or longer. He also recommended Kirksey seek treatment from a medical doctor relating to the appropriateness of psychotropic medications. Finally, Authier provided that Kirksey may be a good candidate for Eye Movement Desensitization and

Reprocessing (EMDR) therapy, a treatment that Authier does not provide. Filing No. 50-2 at 21.

During his deposition, taken almost a year after his diagnostic interview, Authier testified that Kirksey did not participate in weekly therapy sessions with him. Filing No. 90-1 at 107-108. Authier stated that at the time he wrote his opinion he believed weekly therapy sessions would be the best way for Kirksey to recover from his symptoms. *Id*. Through his sessions, he determined that Kirksey "does not respond very well to psychotherapy" and was "not a very suitable psychotherapeutic candidate." Filing No. 90-1 at 108. "As resistive as he's been to taking medicines, which along with psychotherapy is the most effective, I don't think that he'd be a good candidate for weekly psychotherapy sessions." Filing No. 90-1 at 109-110.  Authier further testified that he is not an expert in EMDR therapy but stated it might be of help to Kirksey, when done with a specialized provider, to work through some of the symptoms of trauma. Filing No. 90-1 at 109-112. Similarly, Authier testified that he is not licensed to prescribe medication but that "the research shows that [psychotherapy along with medication] is the best way to help people that are struggling with psychiatric and psychological symptoms. Filing No. 90-1 at 109.

For the reasons discussed below, the exclusion of Authier's testimony is not warranted.

First, OTC argues that Authier's opinions are irrelevant because the June 18, 2020, incident (of which Authier's opinion relies) is outside the applicable statute of limitations for Plaintiff's claims in this lawsuit. Filing No. 77 at 12. As noted in their brief, this is an issue extensively argued in Defendant's motion for summary judgment. Filing No. 70. The Court will take up this issue in due course, but the undersigned does not find it precludes a relevance finding as to Authier's testimony. Rather, Authier's opinions regarding Kirksey's conditions and the source of those conditions is wholly relevant to the ultimate issues in this case and

7

his testimony would be useful to the finder in fact when deciding those issues. *In re Bair Hugger*, 9 F.4th at 777.

Next, OTC generally does not dispute Authier's qualifications as an expert or question his knowledge, skill, experience, training or education in the field of clinical psychology. OTC does seek to exclude Authier's opinions as to EMDR therapy and psychotropic medications based on his qualifications. Filing No. 77 at 5. While Authier testified that he is not an expert in EMDR nor a medical doctor, his limited opinions on these two topics fall within his purview of a clinical psychologist. If accurate, Authier can certainly testify that medication in combination with psychotherapy is the most effective treatment of a specific condition based on his 50 years of experience as a clinical psychologist. Similarly, identifying a type of therapy that Authier is familiar with, but does not facilitate himself, as a treatment option for Kirksey does not exceed his scope of expertise.[2] Authier's opinions have a sufficient basis in his specialized knowledge, and "gaps in an expert witness's qualifications or knowledge generally go to the weight of the witness's testimony, not its admissibility." *Robinson*, 447 F.3d at 1100.).

OTC further argues that, regardless of qualifications, Authier's opinions are scientifically unreliable because he did not properly conduct a differential diagnosis[3] to satisfy the *Daubert* standard. Filing No. 77 at 8. A properly conducted differential diagnosis does satisfy the *Daubert* standard. *Turner v. Iowa Fire Equip. Co.*, 229 F.3d 1202, 1208 (8th Cir. 2000). Indeed, differential diagnoses are "presumptively admissible," and "a district court may exercise its gatekeeping

---

[2] It is noteworthy that Authier's opinion is not that Plaintiff *should* be prescribed medication or *should* engage in EDMR, just that those are avenues he should explore. *See* Filing No. 50-2 at 18.

[3] The medical community uses the term "differential diagnosis" to describe the process of determining which of several conditions is causing a patient's symptoms. In legal contexts, however, differential diagnosis is used to refer to a method of identifying a cause of a patient's condition. *See Turner v. Iowa Fire Equip.* Co., 229 F.3d 1202, 1208 (8th Cir. 2000).

function to exclude only those diagnoses that are scientifically invalid." *Glastetter v. Novartis Pharm. Corp.*, 252 F.3d 986, 989 (8th Cir.2001) (per curiam) (citation omitted).

OTC validly notes that Authier did not review past medical records when forming his opinion to determine whether Kirksey's symptoms could be attributable to something other than his time at OTC. Filing No. 90-1 at 106-107. But, as explained below, OTC underscores the information on which Authier relied and the reasons why.

First, Authier did consider whether Kirksey's symptoms could be attributable to other causes – such as childhood trauma. Filing No. 90-1 at 102. He determined based on his testing and clinical experience that this was unlikely. *Id*. For example, Authier explained that based on Kirksey's responses when completing the Sachs Sentence Completion Test, Authier did not believe Kirksey had experienced paranoid ideation (i.e. does not trust anyone, thinking people are following him, etc.) his entire life. Filing No. 90-1 at 76-78. Similarly, Authier noted that, prior to working at OTC, Kirksey worked in a security job. He concluded that Kirksey was not previously experiencing the present symptoms, such as being easily startled and having paranoid thoughts, based on his work history. Filing No. 90-1 at 78-79; 102-103.

Moreover, when presented with records from a prior provider, Authier did not change his opinion. Filing No. 90-1 at 23; 80-83; 106. Even disclosing information relating to alternative potential causes of an injury at trial does not automatically render an expert's diagnosis scientifically invalid. *See Tedder v. Am. Railcar Indus., Inc.*, 739 F.3d 1104, 1109 (8th Cir. 2014) (Expert who learned of Plaintiff's injury history at trial rather than from Plaintiff himself does not render expert's diagnosis unreliable.); Fed. R. Evid. 703 (permitting an expert to rely on data that he "has been made aware of" at trial).

The Court found two cases, *Turner* and *Kudabeck,* that were particularly helpful in reaching its conclusion. This case is not akin to *Turner* where the district court excluded, and the Eighth Circuit affirmed, the testimony of a treating physician based on his failure to perform a proper differential diagnosis. There, the doctor acknowledged he made no attempt to consider all of the possible causes of the plaintiff's conditions. *Turner*, 229 F.3d at 1208. Rather, this case is more comparable to *Kudabeck* where the treating physician, a chiropractor, arrived at his opinion through the use of normal chiropractic procedures. *Kudabeck*, 338 F.3d at 861. Also like *Kudabeck*, OTC has failed to point out any fact that Authier overlooked. *Id*. This is important because, as it relates to differential diagnosis, opinion testimony is unreliable "only when [an opponent] points to a plausible alternative cause [of the injury] and the doctor offers *no* explanation for why he or she has concluded that was not the sole cause." *Kudabeck*, 338 F.3d at 862. (quoting *Heller v. Shaw Indus*., Inc., 167 F.3d 146, 155 (3d Cir. 1999)) (emphasis in original). Here, Defendant does not identify[4] any plausible alternative cause of Kirksey's conditions, thus strengthening the Court's conclusion that the methodology employed by Authier is reliable.

Finally, nothing in Rule 702, *Daubert*, or its progeny requires "that an expert resolve an ultimate issue of fact to a scientific absolute in order to be admissible." *Bonner v. ISP Tech*., Inc., 259 F.3d 924, 929 (8th Cir.2001). OTC's attacks regarding the completeness of Authier's methodology go to the weight and not the admissibility of his testimony. *See Kudabeck*, 338 F.3d at 861–62.

OTC similarly argues that Authier's opinions are unreliable and lack foundation because they are "nothing more than a regurgitation of information received from Plaintiff's counsel and Plaintiff." Filing No. 77 at 7. Despite OTC's

---

[4] At Authier's deposition, Defendant implies there may be an alternative source of injury in Kirksey's past medical records but does nothing more to identify a cause or inquire into its effect, if any, on Authier's opinions.

10

arguments to the contrary, the Court finds Authier arrived at his conclusions using reliable methodology and based his opinions on sufficient facts. As a clinical psychologist, Authier has over 50 years of experience in diagnosing and treating patients. He applied this extensive experience when evaluating Plaintiff. Authier completed a diagnostic interview, the MMPI-2, and the Sachs Sentence Completion Test, methods he attested were commonly utilized in the practice of clinical psychology, peer reviewed, and reliable. Filing No. 50-2 at 2.

In addition to the diagnostic interview, Authier had approximately 16 sessions with Kirksey which confirmed Authier's impressions and diagnosis of Kirksey. Filing No. 90-1 at 105-108. While much of the information was self-reported, Authier explained how, based on his clinical experience, a patient's perceptions of the events are important in developing a diagnosis. Moreover, Authier testified that his experience as a clinical psychologist allows him to analyze a patient's propensity for truthfulness and challenge a patient's statements if necessary. Filing No. 90-1 at 80. Relying on a patient's reports as to the source of their mental distress does not necessarily render an expert's conclusions unreliable. *See Benson v. City of Lincoln*, No. 4:18CV3127, 2023 WL 5337054, at *6 (D. Neb. Aug. 18, 2023). (finding a psychiatric examination a reliable method for differential diagnosis and causation analysis).  Authier's clinical impressions, based on his standardized diagnostic tools and his diagnostic evaluation, is that Kirksey is experiencing symptoms and those symptoms are tied to his time at OTC. Filing No. 90-1 at 102.

Moreover, OTC seeks to exclude Authier's opinion relating to his original recommendation that Kirksey participate in weekly psychotherapy sessions, arguing it is speculative and unsupported by the facts. Filing No. 77 at 4. The Court finds it is unnecessary to exclude Authier's testimony on this basis. First, there is no indication that Authier intends to reassert his original position, and quite adamantly explains in his deposition why it was misplaced. This information may

11

provide context to the testimony at trial. Second, an expert's contradictions or concessions go toward the weight of the evidence put forth by the expert, not toward its admissibility. *United States v. Vesey*, 338 F.3d 913, 917 (8th Cir. 2003) (finding contradictions in expert testimony do not make the testimony "unreliable" as used in Rule 702, but rather goes to the weight of the testimony); *see also Gonzalez v. Inman Trucking, Inc.*, No. EP-16-CV-6-PRM, 2017 WL 7905499, at *5 (W.D. Tex. June 20, 2017) ("The fact that [the expert] arguably contradicted himself during his deposition testimony does not bear upon the admissibility of his testimony, but upon his credibility, which is a jury determination."); *Exim Brickell LLC v. Bariven*, No. 09–CV–20915, 2011 WL 13131317, at *5 (S.D. Fla. Mar. 11, 2011) ("Citing to various passages in [the expert's] deposition transcript in which the witness contradicted or went back on certain assertions that he had previously made," the party opposing the testimony sought to exclude it on those grounds. The court, however, "found this argument unpersuasive because such contradictions or concessions should go toward the weight of the evidence put forth by the expert, not toward its admissibility.").

All in all, the Court concludes this is not a case in which "there is simply too great an analytical gap between the data [Authier considered] and the opinion[s] [he] proffered." *In re Bair Hugger*, 9 F.4th at 777–78. Authier's opinion is not "'so fundamentally unsupported' by its factual basis 'that it can offer no assistance to the jury.'" *In re Bair Hugger*, 9 F.4th at 778 (quoting *Loudermill*, 863 F.2d at 570). Rather, this is a case in which the "general rule" that "the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility" is applicable. *Id*. at 778; *see also Benson*, 2023 WL 5337054, at *7. (finding expert testimony reliable where psychiatric examination was largely based on Plaintiff's self reporting). Thus, the Court finds Authier's testimony is sufficiently reliable to be admissible.

The Court finds Authier to be qualified and his opinions to be relevant and reliable. *See In re Bair Hugger*, 9 F.4th at 777. OTC can challenge Authier's opinions through traditional means including cross-examination and the presentation of contrary evidence. Thus, the Court denies Defendant's motion in limine to exclude the testimony of Plaintiff's expert Jerry Authier.

### 2. Timothy D. Loudon

As previously stated, OTC designated Loudon as an expert in the field of human resources and workplace investigations. In his report dated, March 11, 2025, Loudon outlines his background and professional experience, provides an overview of the materials reviewed in preparation for the expert opinion, summarizes what he views as the key facts, and then opines as to OTC's handling of each of Kirksey's complaints. Filing No. 84-1 at 4-13. Specifically, Loudon forms opinions as to "(1) the adequacy of [OTC's] investigation of and response to Kirksey's June 18, 2020 complaint of racial harassment (i.e., the hangman's noose incident); (2) the adequacy of the [OTC's] investigation of and response to Kirksey's October 22, 2022 complaint of racial harassment (i.e., the clown's head incident); (3) the adequacy and necessity of the [OTC's] investigation of and response to the October 25, 2022 report that Kirksey "carried a piece" at work; (4) the adequacy of the [OTC's] investigation of and response to Kirksey's October 20, 2023 complaint regarding verbal abuse (i.e., the Jim Homan incident); and (5) the reasonableness of the [OTC's] June 1, 2023 request that Kirksey authorize the Company to access his Motor Vehicle Records." Filing No. 84-1 at 9. Loudon concludes that OTC's actions were not deficient in any matter. *Id.*

Courts in this district, and elsewhere, have differing opinions on whether human resources experts can testify as to industry standards and the Eighth Circuit has not squarely addressed this issue. Compare *Batiste II v. Titan Med. Grp., LLC*, No. 8:22CV190, 2023 WL 5105170, at *3 (D. Neb. Aug. 9, 2023) (allowing HR expert to testify as to industry standards) with *Benson*, 2023 WL 5337054, at *9.

13

(excluding totality of HR expert because it would not assist the jury). Some of this difference appears to turn on a court's individualized analysis of the relevance of the testimony including the helpfulness to the trier of fact, the ability of a laymen to draw proper conclusions given from the facts and circumstances as to not require expert testimony, and the information necessary to prove the underlying claim. *See Benson*, 2023 WL 5337054, at *10; *Wilson v. Muckala*, 303 F.3d 1207, 1218 (10th Cir. 2002) ("The issues to which [Plaintiff's] expert would have testified were not so impenetrable as to require expert testimony."); *Karlo v. Pittsburgh Glass Works, LLC*, 849 F.3d 61, 84 (3d Cir. 2017) (Human resources testimony lacked relevance because offered testimony was inadequate to rebut Defendant's defense).

However, it is undisputed that a human resources expert cannot testify as to issues of law or to express opinions that invade the province of the Court or the jury. *Batiste II*, 2023 WL 5105170 at *3; *Benson*, 2023 WL 5337054 at *11; *see also Roohbakhsh v. Bd. of Trs. of Nebraska State Colleges*, No. 8:17CV31, 2019 WL 5653448, at *4 (D. Neb. Oct. 31, 2019) (Title IX expert cannot apply facts to the law and determine whether legal standard was met); *S. Pine Helicopters, Inc.*, 320 F.3d at 841 (expert testimony on legal matters is not admissible); *United States v. Benton*, 890 F. 3d 697, 717 (8th Cir. 2018) (Court may exclude expert testimony that constitutes an impermissible instruction on the law).

OTC, citing *Batiste* and *Roohbakhsh*, argues Loudon's opinions are proper and admissible to explain industry standards including investigation processes, procedures, and general compliance principles. Filing No. 87 at 11. However, upon review of Loudon's report, the Court is not convinced. Rather, Loudon intends to offer opinions on the "adequacy" and "reasonableness" of OTC's investigation and response. These are akin to the opinions rejected by the Court in *Benson* where the HR expert intended to opine on the adequacy or acceptability of the relevant human resources investigations and whether an undefined standard of care was met. *See Benson*, 2023 WL 5337054 at *11*. Moreover, unlike the proposed

14

testimony in *Batiste* and *Roohbaksh*, nowhere does Loudon indicate he intends to testify generally to industry standards or even what the industry standards are. *See* Filing No. 84-1 at 4-13.

To sustain a claim against OTC for a racially hostile work environment, Kirksey must show (1) he is a member of a protected group, (2) he was subjected to unwelcome harassment, (3) the harassment was based upon race, (4) the harassment affected a term, condition, or privilege of employment, and (5) the employer knew or should have known of the racially discriminatory harassment and failed to take prompt and effective remedial measures to end the harassment. *See Ross v. Nebraska*, 234 F.3d 391, 395–96 (8th Cir.2000) (citing *Howard v. Burns Bros*., Inc., 149 F.3d 835, 840 (8th Cir.1998)). At the time of trial, the "promptness" and "effectiveness" of an employer's response is a question of fact for the jury to resolve and a matter for the court to instruct. *See Carter v. Chrysler Corp*., 173 F.3d 693, 702 (8th Cir. 1999); Model Civ. Jury Instr. 8th Cir. 8.42. Allowing Loudon to testify as an expert to the "adequacy" and "reasonableness" of OTC's investigation would invade the province of the jury. Therefore, Kirksey's motion to exclude the report and testimony of Timothy D. Loudon, Filing No. 81, is granted.

Accordingly,

IT IS ORDERED:

1. Defendant Oriental Trading Company's motion in limine to exclude testimony of Plaintiff's expert witness Jerry Authier, Filing No. 76, is denied.
2. Plaintiff Keith Kirksey's motion to exclude the report and testimony of Timothy D. Loudon, Filing No. 81, is granted.

Dated this 9th day of March, 2026.

BY THE COURT:

*s/ Jacqueline M. DeLuca*
United States Magistrate Judge